## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **ODESSA WALLER,** )<br>    **Plaintiff,** )<br> )<br>    **v.** )<br> )<br>**MARTIN O'MALLEY,** )<br>***Commissioner of Social Security***, )<br>    **Defendant.** ) | **CIVIL ACTION NO. 2:23-00329-N** |

### MEMORANDUM OPINION AND ORDER

Plaintiff Odessa Waller brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 14, 15, 16) and those portions of the certified transcript of the administrative record (Doc. 13) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

### I.    *Procedural Background*

Waller protectively filed the subject SSI application with the Social Security

---

[1] "Title XVI of the [Social Security] Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 1382(a)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 10, 11).

Administration ("SSA") on January 27, 2021. After it was denied initially, and again on reconsideration, Waller requested, and on December 6, 2022, received, a hearing on her application before an Administrative Law Judge ("ALJ") with the SSA's Office of Hearings Operations. On December 28, 2022, the ALJ issued an unfavorable decision on Waller's application, finding her not entitled to benefits. (*See* Doc. 13, PageID.49-64).

The Commissioner's decision on Waller's application became final when the Appeals Council for the SSA's Office of Appellate Operations denied her request for review of the ALJ's unfavorable decision on July 7, 2023. (*Id.*, PageID.36-40). Waller subsequently brought this action under § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 587 U.S. 97, 102-03, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court "'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must

affirm if the decision reached is supported by substantial evidence.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally

deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) ("Harner's references to the substantiality of the evidence, the administrative law

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

---

judge's analysis of her fibromyalgia, and the administrative judge's consideration of her daily activities as '[d]iminish[ing] the [p]ersuasiveness of [h]er [a]llegations' consist only of block quotations from and cursory mentions of various decisions of this and other courts. Harner failed to refer to the facts of her case or to provide any meaningful explanation as to how the decisions she cites apply to her claim, her arguments are forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate"); *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020) (per curiam) (unpublished ("As the government notes, Walker's argument on this issue consists of lengthy block quotes to caselaw without any attempt to apply the law to the facts of this case. He has thus abandoned the issue by failing to develop his arguments.").

"'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as

adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions ... must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Relevant here, eligibility for SSI requires a showing that the claimant is "disabled[,]" 42 U.S.C. § 1382(a)(1)-(2), meaning the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established

that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's

final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

## III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Waller had not engaged in substantial gainful activity since January 27, 2021, her application date.[7] (Doc. 13, PageID.54). At Step Two,[8] the ALJ determined that Waller had the following severe impairments: type II diabetes mellitus, diabetic neuropathy, and obesity. (Doc. 13, PageID.54-55). At Step Three,[9] the ALJ found that Waller did not have an

---

[7] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore*, 405 F.3d at 1211. Waller alleged disability beginning on the application date. (*See* Doc. 13, PageID.52).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.'" *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."

impairment or combination of impairments that met or equaled the severity of a

specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404,

Subpt. P, App. 1. (Doc. 13, PageID.55).

At Step Four,[10] the ALJ determined that Waller had the residual functional

---

*Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work … If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

capacity (RFC) "to perform medium work as defined in 20 CFR 416.967(c)[11] except she can occasionally operate foot controls; frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and…can never climb ropes, ladders, or scaffolds." (Doc. 13, PageID.55-60). The ALJ also found that Waller had no past relevant work. (*Id.*, PageID.60).

At Step Five, after considering testimony from a vocational expert (VE),[12] the ALJ found that there exist a significant number of jobs in the national economy as a cook helper (248,000 nationally), industrial cleaner (85,000 nationally), and hospital housekeeper (41,000 nationally) that Waller could perform given her RFC, age, education, and work experience. (Doc. 13, PageID.60-61). Thus, the ALJ found that Waller was not under a disability as defined in the Social Security Act since her application date. (*Id.*, PageID.61).

## IV.   *Analysis*

---

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, … he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

### a.  There was no "apparent" conflict between the VE's testimony and the Dictionary of Occupational Titles.

Waller first claims that the ALJ reversibly erred by failing at Step Five to resolve an apparent conflict between the VE's testimony and information in the Dictionary of Occupational Titles (DOT). The undersigned is not persuaded.

"The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018).[13] "The DOT groups jobs into 'occupations' based on their similarities and assigns each occupation a code number." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1281 (11th Cir. 2020). "[T]he DOT is integral to disability hearings" "as a source of jobs data." *Washington*, 906 F.3d at 1365-66. *See also Goode*, 966 F.3d at 1281 ("To obtain a job-numbers estimate, a vocational expert may consult a publication like the DOT. *See* 20 C.F.R. § 416.966(d)(1)…Although the DOT is outdated—some would say obsolete—it remains one of the vocational expert's primary tools.").

Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000), "imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an

---

[13] "The Department of Labor was responsible for compiling [the DOT]. As of 1999, the Department stopped producing new editions of the work, and much of the data contained in the DOT is now found in online databases." *Washington*, 906 F.3d at 1357 n.2.

apparent conflict between the VE's testimony and the DOT. Rather,...the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington*, 906 F.3d at 1362.[14] "Specifically, the ALJ must: (1) identify any 'apparent' conflicts, regardless of whether that conflict is brought to the ALJ's attention by the parties or the VE; (2) explain any discrepancy between the VE's testimony and the DOT; and (3) detail in the decision how that discrepancy was resolved." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (citing *Washington*, 906 F.3d at 1362).

In this context, " 'apparent' should be taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT. Put another way, if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion. [Courts] take the word 'apparent' to mean 'seeming real or true, but not necessarily so.' " *Washington*, 906 F.3d at 1366 (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)).

"A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." SSR 83-10, 1983 WL 31251,

---

[14] "Although SSR 00-4P is not binding on this court, the SSA is nevertheless bound to follow it." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (citing *Washington*, 906 F.3d at 1361). *Accord, e.g., Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1324 n.12 (11th Cir. 2020) ("A Social Security ruling is an 'agency ruling[ ] published under the authority of the Commissioner of Social Security' and is 'binding on all components of the Administration.' *Sullivan v. Zebley*, 493 U.S. 521, 539 n.9, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (internal quotation marks omitted). Although we are not bound by a Social Security ruling, we do afford it deference. *See Fair v. Shalala*, 37 F.3d 1466, 1468-69 (11th Cir. 1994).").

at *6 (1983). The RFC limited Waller to a reduced range of medium work, but without any additional standing or walking limitations. Waller argues that the ALJ failed to resolve an "apparent" conflict between the VE's testimony that she can perform the jobs of cook helper,[15] industrial cleaner,[16] and hospital housekeeper[17] in

---

[15] "Assists workers engaged in preparing foods for hotels, restaurants, or ready-to-serve packages by performing any combination of following duties: Washes, peels, cuts, and seeds vegetables and fruits. Cleans, cuts, and grinds meats, poultry, and seafood. Dips food items in crumbs, flour, and batter to bread them. Stirs and strains soups and sauces. Weighs and measures designated ingredients. Carries pans, kettles, and trays of food to and from work stations, stove, and refrigerator. Stores foods in designated areas, utilizing knowledge of temperature requirements and food spoilage. Cleans work areas, equipment and utensils, segregates and removes garbage, and steam-cleans or hoses garbage containers [KITCHEN HELPER (hotel & rest.) 318.687-010]. Distributes supplies, utensils, and portable equipment, using handtruck. May be designated according to worker assisted as Cook Helper, Broiler or Fry (hotel & rest.); Cook Helper, Dessert (hotel & rest.); Cook Helper, Vegetable (hotel & rest.); Pantry Goods Maker Helper (hotel & rest.). Performs other duties as described under HELPER (any industry) Master Title." DOT 317.687-010, 1991 WL 672752.

[16] "Keeps working areas in production departments of industrial establishment in clean and orderly condition, performing any combination of following duties: Transports raw materials and semifinished products or supplies between departments or buildings to supply machine tenders or operators with materials for processing, using handtruck. Arranges boxes, material, and handtrucks or other industrial equipment in neat and orderly manner. Cleans lint, dust, oil, and grease from machines, overhead pipes, and conveyors, using brushes, airhoses, or steam cleaner. Cleans screens and filters. Scrubs processing tanks and vats. Cleans floors, using water hose, and applies floor drier. Picks up reusable scrap for salvage and stores in containers. Performs other duties as described under CLEANER (any industry) I Master Title. May burn waste and clean incinerator. May pick up refuse from plant grounds and maintain area by cutting grass or shoveling snow. May operate industrial truck to transport materials within plant. May start pumps to force cleaning solution through production machinery, piping, or vats. May start pumps to lubricate machines. May be designated according to area cleaned as Alley Cleaner (textile); Can-Filling-Room Sweeper (beverage); Casting-And-Locker-Room Servicer (plastic-synth.); Ceiling Cleaner (any industry); Engine-Room Cleaner (any industry); Floor Cleaner (any industry); Overhead Cleaner (any industry)." DOT 381.687-018, 1991 WL 673258.

[17] "Cleans hospital patient rooms, baths, laboratories, offices, halls, and other areas: Washes beds and mattresses, and remakes beds after dismissal of patients. Keeps

spite of that standing/walking requirement, and the DOT's descriptions of those jobs, which "do not include *any* tasks likely to be performed while sitting, no less while sitting 2 hours out of each 8-hour day." (Doc. 14, PageID.516). However, the undersigned agrees with the Commissioner that this did not arise to an "apparent" conflict the ALJ was required to address. Contrary to Waller's assertion that "none of th[o]se jobs involve seated tasks" and "plainly require the ability to stand/walk continuously to perform the tasks described" (Doc. 14, PageID.518), the DOT's descriptions for the jobs identified for Waller at Step Five "do not detail HOW any of those job duties are to be performed, whether standing or sitting[,]" as the Commissioner correctly points out (Doc. 15, PageID.530). "Washington does not require the ALJ to draw inferences about job requirements that are unsupported by the DOT's text and then resolve conflicts between the VE's testimony and those unsupported inferences." *Christmas v. Comm'r of Soc. Sec.*, 791 F. App'x 854, 857 (11th Cir. 2019) (per curiam) ("Ms. Christmas notes that the VE acknowledged she cannot work in fast-paced assembly line jobs and argues this conflicts with the DOT description, which suggests that a fruit distributor is a fast-paced assembly line job. However, the DOT does not discuss the pace of a fruit distributor job or the quantity of fruit that a distributor must or should handle." (record citation omitted)). *See also Buckwalter*, 5 F.4th at 1323 ("potential[] tension" between VE's testimony and DOT

---

utility and storage rooms in clean and orderly condition. Distributes laundered articles and linens. Replaces soiled drapes and cubicle curtains. Performs other duties as described under CLEANER (any industry) I Master Title. May disinfect and sterilize equipment and supplies, using germicides and sterilizing equipment." DOT 323.687-010, 1991 WL 672782.

did not arise to the level of an "apparent" conflict where RFC term did "not plainly contradict" purportedly conflicting DOT term).[18]

Accordingly, Waller has shown no reversible error in the ALJ's consideration of the VE's testimony.

### b. The ALJ articulated adequate reasons, supported by substantial evidence, for discrediting Waller's subjective complaints of disabling symptoms.

Waller's second, and last, claim of reversible error is that the ALJ failed to sufficiently credit her subjective testimony regarding the limiting effects of her pain and other symptoms. No reversible error has been shown.

In determining whether [a claimant is] disabled, [the Commissioner] will consider all [a claimant's] symptoms, including pain, and the

---

[18]    Moreover, the DOT's descriptions of the cook helper and industrial cleaner jobs include tasks for each that could readily be performed while sitting. A cook helper could stay seated while she "[w]ashes, peels, cuts, and seeds vegetables and fruits[; c]leans, cuts, and grinds meats, poultry, and seafood[;d]ips food items in crumbs, flour, and batter to bread them[; s]tirs and strains soups and sauces[; and w]eighs and measures designated ingredients." DOT 317.687-010, 1991 WL 672752. An industrial cleaner could stay seated to "operate industrial truck[s] to transport materials within plant[,]" or to "start pumps…" DOT 381.687-018, 1991 WL 673258.

For the position of hospital housekeeper, "disinfect[ing] and steriliz[ing] equipment and supplies, using germicides and sterilizing equipment[,]" could conceivably be performed while sitting, depending on what the "equipment and supplies" are. DOT 323.687-010, 1991 WL 672782. However, even if the ALJ failed to resolve an "apparent" conflict regarding the hospital housekeeper job, that error would be harmless, as it would still leave 333,000 combined cook helper and industrial cleaner jobs that the VE testified Waller could perform. *See Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (affirming ALJ's finding that 80,000 jobs constituted a "significant number." *See also Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (per curiam) (unpublished) ("We are left with the vocational expert's testimony that Valdez was able to work in 78,000 jobs in the national economy. We've held that a similar number of available jobs was substantial evidence to support the ALJ's finding on step five." (citing *Allen*, 816 F.2d at 602)); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (per curiam) (unpublished) (affirming ALJ's finding that 23,800 jobs in the national economy was a "significant number" satisfying Step Five).

extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The Commissioner] will consider all of [a claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [his or her] activities of daily living and … ability to work. However, statements about … pain or other symptoms will not alone establish that [a claimant is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of … pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled. In evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the Commissioner] will consider all of the available evidence, including … medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]. [The Commissioner] will then determine the extent to which [the] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work.

20 C.F.R. § 416.929(a).

"Factors relevant to [a claimant's] symptoms, such as pain, which [the Commissioner] will consider include: (i) [the claimant's] daily activities; (ii) The location, duration, frequency, and intensity of…pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate…pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of…pain or other symptoms; (vi) Any measures [the

claimant] use[s] or ha[s] used to relieve…pain or other symptoms (e.g., lying flat on [one's] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms." *Id.* § 416.929(c)(3).

"If a claimant testifies as to his subjective complaints of disabling pain and other symptoms, ... the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. *Accord Mitchell*, 771 F.3d at 782. When making a credibility determination, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Mitchell*, 771 F.3d at 782 (quoting *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted)).

The ALJ summarized Waller's subjective testimony as follows:

> At the hearing, the claimant testified that she stopped working because she did not have a car. She then stated that she had not been able to work since January 2021 because she could not walk due to diabetes with neuropathy. She alleged that her hands also went numb and that she sometimes dropped her phone, glasses, and the television remote but not all the time. She alleged that she could only walk and/or stand about five minutes but that she sat all the time.
>
> …

In her function report from March 28, 2022, the claimant alleged that her feet itched, burned, and swelled; that she had to elevate her feet a lot; and that she mostly stayed in the bed during the day. However, she also noted that she was able to prepare simple meals for herself, that she walked when she went out or paid someone to take her, and that she did not use an assistive device to walk. Additionally, despite her diabetic neuropathy, she reported that she was able to talk on the phone with others every other day and work on puzzle books and watch television every day.

…

Further, at the hearing, the claimant stated that although it did not stop the pain, burning, swelling, and itching in her feet, that her diabetes medication did help a lot. She also stated that she did not have negative medication side effects, that she was able to take public transportation to get around, that she got her daughter to help her but did not use a cane to assist with ambulation, that she did puzzle books, that she had no problems dressing herself, that she had no problems picking up change from a table, that she could lift a gallon, and that she was able to tend to her personal hygiene and did so sitting down.

(Doc. 13, PageID.56-57 (record citations omitted)).

The ALJ determined that Waller's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[,]" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[,]" finding that "the evidence supports that [her] impairments do not result in greater limitations than contained in the residual functional capacity determination." (*Id.*, PageID.56). In support, the ALJ explained: "[A]lthough the claimant has had some exacerbations of symptoms related to her diabetes mellitus; overall, they have been minimal and have been well controlled with prescription

medications. The claimant has maintained the ability to perform activities of daily living, overall physical examinations are routinely normal, and no treating physician has placed any continuing limitation on the claimant due to this impairment." (*Id.*, PageID.59).

Waller argues the ALJ's credibility determination is deficient for two reasons: (1) the ALJ failed to compare Waller's statements to the findings of consultative examiner Lakimbrell Marshall, NP, and (2) the ALJ impermissibly relied on Waller's "participation in everyday activities of short duration, such as housework[,]" to discredit her subjective testimony. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Addressing the second issue first, while a claimant's "activities of daily living" are a relevant consideration in evaluating a claimant's subjective complaints, *see* 20 C.F.R. § 416.929(c)(3)(i), the undersigned agrees that the ALJ's consideration of Waller's activities of daily living leaves much to be desired. In particular, like Waller, the undersigned also fails to see how Waller's ability "to talk on the phone with others every other day and work on puzzle books and watch television every day" "despite her diabetic neuropathy" is indicative of the limitations assigned in the RFC or an ability to work in general. Nevertheless, the ALJ did not rely solely on Waller's activities of daily living to partially discredit her testimony. *See Stacy v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 1005, 1011 (11th Cir. 2016) (per curiam) (unpublished) ("Stacy's daily activities, which included feeding his dogs and going to the store, did not automatically imply that he is not disabled, but that does not mean that the ALJ erred by considering those activities

as evidence of his ability to work in light of the other evidence in the record. *See Lewis*, 125 F.3d at 1441. As the ALJ explained, Stacy's testimony about his daily activities, which included feeding his dogs, driving, shopping, watching television, and using the computer, combined with the medical evidence that was consistent with an ability to perform light work, suggested that Stacy's testimony about the extent of his symptoms was not credible.").

For instance, the ALJ found that "with proper medication management [Waller]'s diabetes and diabetic neuropathy is and has been well-controlled throughout the majority of the period under consideration." (Doc. 13, PageID.56). *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." (quotation omitted)). The ALJ noted several instances from the medical record in support of this finding,[19] and Waller does not address it in her briefing. The ALJ also found that Waller's subjective testimony was not entirely supported by the objective medical evidence, noting the generally unremarkable findings documented in her treating medical providers' notes and the mostly conservative

---

[19] (Doc. 13, PageID.57-58 ("[I]n July and October 2020 and January and April 2021, the claimant reported feeling well and that the medications were helping with her diabetic neuropathic pain… [W]hen the claimant presented to Whatley Health Services for telehealth visits in August and November 2021, she reported that prescription medication helped with her diabetic neuropathic pain… [E]arlier in March 2022,…the claimant reported that prescription medication helped with her diabetic neuropathic pain and that she had even been exercising more…[W]hen she presented to Whatley Health Services in July 2022,…despite her alleged symptoms and limitations related to her diabetes and diabetic neuropathy, she reported that she ate granola bars frequently along with drinking sodas and eating fried fish frequently. Providers also noted that the claimant refused to follow with Wellness Clinic for further diabetic support.")).

treatment they prescribed. Waller claims the findings of NP Marshall at her consultative examination support Waller's subjective testimony—her "[s]low stiff gait[;]" her inability to walk on her heels or her toes at the examination "due to unsteadiness[;]" her need for "moderate assistance along with [a] foot stool to get up on exam table" (which was above her waist); her ability to only "[s]quat 1/4 with a chair" and her slowness to rise. (Doc. 13, PageID.362-363).

However, "[u]nder a substantial evidence standard of review, [Waller] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished)  It does not matter that a different result could have been reached based upon the record. The Court cannot decide the facts anew, reweigh the evidence, or substitute its judgment for the ALJ's, *Winschel*, 631 F.3d at 1178, and "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence[,]" *Barnes*, 932 F.2d at 1358, an evidentiary burden the Supreme Court has described as "not high." *Biestek*, 587 U.S. at 103. "The question is not … whether ALJ could have reasonably credited [her] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished).

As the ALJ noted, despite the symptoms she observed at the consultative examination, the only opinion that NP Marshall provided regarding their limiting

effects was that they "may cause barriers to her ability to perform [activities of daily living] independently" (Doc. 13, PageID.365). The ALJ found that opinion "unpersuasive" because, in addition to being "without adequate explanation and vague[,]" it was "inconsistent with the record as a whole and treatment records that routinely show conservative treatment for her impairments and without continuing limitations noted to be placed on the claimant by any treating physicians for any impairment…" (*Id.*, PageID.59-60). This statement makes it reasonably clear, that, to the extent NP Marshall observed more limiting symptoms at her one-time consultative examination of Waller, the ALJ found those symptoms were outliers that were not reflected in the notes of Waller's treating medical providers from examinations both preceding and following the consultative examination. Waller largely fails to explain how her treating medical providers' notes support her claims of disabling pain and other symptoms. In sum, the undersigned finds that the ALJ made "a clearly articulated credibility finding" that provided "explicit and adequate reasons" for partially discrediting Waller's subjective testimony, and at least substantial evidence supports that finding.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Waller's application for benefits is due to be **AFFIRMED**.

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Waller's January 27, 2021 SSI application is

**AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Judgment in accordance with this order shall hereafter be set out by separate document, in compliance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the **27th** day of **September 2024**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**